# Third District Court of Appeal

## State of Florida

Opinion filed November 25, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-628
Lower Tribunal No. 16-24456
_____

**Marcel Ashley,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jose L. Fernandez and Marisa Tinkler-Mendez, Judges.

Carlos J. Martinez, Public Defender, and Robert Kalter and Susan Lerner, Assistant Public Defenders, for appellant.

Ashley Moody, Attorney General, and Brian H. Zack, Assistant Attorney General, for appellee.

Before EMAS, C.J., and LOGUE and MILLER, JJ.

EMAS, C.J.

**INTRODUCTION**

Marcel Ashley ("Ashley") appeals from his convictions and sentences for, *inter alia*, armed burglary and armed robbery. Ashley contends that the trial judge committed reversible error by requiring Ashley's mother to take the witness stand for the sole purpose of having her invoke the Fifth Amendment in front of the jury and refuse to testify. We agree and reverse and remand for a new trial.[1]

**FACTS AND BACKGROUND**

In November 2016, the victim was abducted from his home by an armed intruder, who forced the victim to drive to an ATM and withdraw money from the victim's account. After returning to the victim's home, the intruder fled in the victim's car with the money obtained from the ATM, along with other items taken from the home.

Police later tracked the victim's car to a gas station, but upon arrival the vehicle was gone. Police were able to recover video surveillance from the gas station, which depicted two men near the victim's car. This video was later released to the media, after which Ashley's mother (Ms. Hope) contacted the police, identified one of the men in the video as her son, and provided police with her son's phone number. Ms. Hope also signed the back of a photograph of her son, which

---

[1] Given our disposition on this issue, we find it unnecessary to reach the other claims of error raised by Ashley in this appeal.

2

the police later used in a photo lineup, at which the victim identified Ashley as the armed intruder. Ashley was subsequently arrested.

Ashley's first trial ended in a hung jury. At the second trial, the State sought to call Ms. Hope (who was not called as a witness in the first trial) to provide testimony. The State was advised, however, that Ms. Hope would invoke her Fifth Amendment right and would refuse to testify at trial against her son.

At a hearing conducted outside the presence of the jury, Ms. Hope (represented by counsel) reaffirmed to the trial court that she would invoke her Fifth Amendment right and refuse to testify if called to the witness stand. The trial court ordered Ms. Hope to testify, and advised her that she would be held in contempt if she continued to refuse.[2] Nonetheless, she persisted in her refusal to testify, and the

---

[2] The trial court determined that Ms. Hope's refusal to testify could not validly be based on a Fifth Amendment privilege as there was no reasonable basis to believe her testimony might incriminate her. See, e.g., State v. Stahl, 206 So. 3d 124 (Fla. 2d DCA 2016) (noting that in order for witness to establish a proper invocation of the Fifth Amendment privilege, he must establish, inter alia, that he will be incriminated). The State contends that no error was committed because Ms. Hope's refusal to testify was not proper—that is, she had no legitimate right to invoke the Fifth Amendment because she had no reasonable apprehension that she would incriminate herself by her testimony under oath. This argument misses the mark. Whether or not the witness properly invoked her Fifth Amendment right does not control whether the trial court errs in requiring the witness to invoke that right in front of the jury. Indeed, this case well illustrates the reason for this. The less likely it appears that Ms. Hope would incriminate herself by her testimony, the stronger the implication that her refusal to testify is designed to avoid incriminating her son, the defendant. In other words, the potential for prejudice is higher when the witness' motive for refusing to testify is manifestly not self-protective, but defendant-protective. Given that the witness in this case was the defendant's own mother, the

trial court, following the hearing, found her in direct criminal contempt of court.[3] The court recessed trial for the weekend and agreed to temporarily defer sentencing so Ms. Hope could reconsider her decision.

When trial resumed, Ms. Hope again indicated she would not testify. Nevertheless, and over the objection of defense counsel and counsel for Ms. Hope, the trial court required her to take the witness stand and invoke her Fifth Amendment right in front of the jury. The State also indicated the need to call Ms. Hope to the witness stand for the ostensible purpose of establishing her "unavailability" as a witness so that the State could introduce evidence that it claimed would otherwise be excluded as hearsay.

_____

State had to know that forcing the mother to invoke her Fifth Amendment right in front of the jury would lead the jury to the inescapable conclusion that she had evidence that incriminated her son, and that she was not going to testify about it at her son's trial. Thus, the State was able to "incriminate" the defendant in this case not with evidence, but with inferences drawn from a refusal to provide evidence.

[3] While not material to our decision, it remains important to note that the trial court erred in holding Ms. Hope in direct **criminal** contempt and imposing a sentence for same. Instead, the proper procedure to be followed when a witness refuses a valid court order to testify is one for direct **civil** contempt. See Pedroso v. State, 450 So. 2d 902 (Fla. 3d DCA 1984) (explaining generally the differences between civil and criminal contempt). While the court could validly take Ms. Hope into custody for her refusal to comply with the trial court's order, the purpose of civil contempt is not to punish the contemnor but to coerce compliance with the valid court order to testify. Ponder v. Ponder, 438 So. 2d 541, 542 (Fla. 1st DCA 1983). In other words, like any other individual held in custody on a civil contempt order, Ms. Hope "carries the key to [her] cell in [her] own pocket." Pugliese v. Pugliese, 347 So. 2d 422, 424 (Fla. 1977) (additional citations omitted). As soon as she testifies, she has complied with the trial court's order, purging the civil contempt and leading to her release.

4

The following testimony of Ms. Hope was then elicited:

STATE: Ma'am, can you please state your name for the record.

MS. HOPE: I refuse to. I don't want to testify.

STATE: You won't state your name?

MS. HOPE: No. I plead the 5th.

STATE: You plead the 5th, okay.

MS. HOPE: Yes.

STATE: Okay. Do you have any children? Is that a yes? Your Honor, I would ask --

COURT: You need to respond, Madam.

MS. HOPE: I refuse, Your Honor.

COURT: All right. Next question.

STATE: Marcel Ashley is your child. Correct?

DEFENSE: Objection. Leading.

STATE: I ask the Court to treat [Ms. Hope] as a hostile witness.

THE COURT: Overruled.

STATE: You can answer.

MS. HOPE: I refuse.

STATE: Judge, can we go sidebar?

At sidebar the State again requested permission to treat Ms. Hope as a hostile witness and the trial judge denied the request, suspended the testimony of Ms. Hope and she gave no further testimony in the case.

**DISCUSSION AND ANALYSIS**

Florida law is clear that it is improper for the State to call a witness, who is closely identified with the defendant, to testify before the jury when the State knows that the witness will invoke her Fifth Amendment right against self-incrimination and refuse to testify. See Apfel v. State, 429 So. 2d 85, 86 (Fla. 5th DCA 1983) (holding: "where the state, knowing that a witness will assert his right against self-incrimination, nevertheless calls that witness who is closely identified with the defendant or similarly implicated and the witness does in fact claim the privilege, the defendant is thereby prejudiced . . . . Where the court and the prosecution are aware that a witness will invoke the privilege, it is improper for the court to permit the jury to hear the witness invoke his privilege.) See also Hunter v. State, 8 So. 3d 1052, 1066 n.6 (Fla. 2008) ("The State may not call a witness to testify that it knows will invoke his or her Fifth Amendment right against self-incrimination. Richardson v. State, 246 So. 2d 771, 777 (Fla. 1971). Nor may the defense. Faver v. State, 393 So. 2d 49, 50 (Fla. 4th DCA 1981)."); Kaplow v. State, 157 So. 2d 862 (Fla. 3d DCA 1963); Laramee v. State, 90 So. 3d 341, 345 n.7 (Fla. 5th DCA 2012) (noting it is error for a trial court to permit a witness, who is expected to invoke his Fifth

6

Amendment privilege, to testify in the presence of the jury solely for that purpose); Hankerson v. State, 347 So. 2d 744 (Fla. 4th DCA 1977) (holding defendant was prejudiced by court forcing his co-defendant to take the stand and invoke his Fifth Amendment privilege in front of the jury).

Moreover, the trial court's action in this case was unduly prejudicial. Ms. Hope provided no relevant testimony to the jury. Indeed, she provided no actual testimony at all, other than persisting in her refusal to provide testimony. Therefore, the only "relevance" to her testimony was the inference the jury likely drew from this staged refusal to testify: That Ms. Hope did not want to provide incriminating evidence against someone with whom she was closely identified—her own son.[4]

While one cannot deny the dramatic courtroom moment created by a witness "taking the Fifth" in front of a jury, where the court knows in advance the witness will refuse to testify even upon pain of contempt, it is impermissible to require the witness to take the stand and do so, as it can only serve to create "irreparable damage and injury in the eyes of the jury." Richardson, 246 So. 2d 777.

---

[4] Indeed, the trial court's explanation for requiring Ms. Hope to testify highlights the prejudicial potential involved in these situations:

> It has an impact on the trial. Don't you think the jury should know [that] she is listed as a State witness? She is refusing to testify.

The State, as the beneficiary of the trial court's error, shoulders the burden of demonstrating beyond a reasonable doubt that requiring Ms. Hope to take the stand and refuse to testify in front of the jury did not contribute to the jury verdict. State v. DiGuilio, 491 So. 2d 1129 (Fla. 1986). Upon our consideration of the record, we conclude that the State has failed to meet that burden.

Finally, we reject as invalid the State's proffered reason for insisting on calling Ms. Hope to the witness stand. The State asserted the need to demonstrate that the witness was "unavailable" so it could introduce hearsay evidence at trial. This argument, however, is devoid of merit. The evidence sought to be admitted— a recorded phone call between Ashley and Ms. Hope—was independently admissible as an "admission" without any need to establish a witness' unavailability. See § 90.803(18), Fla. Stat. (2018)(providing: "A statement that is offered against a party and is . . . [t]he party's own statement" is an admission and may be introduced into evidence without regard to the availability of the declarant).[5]

Additionally, even if the State had been required to make a showing that Ms. Hope was unavailable as a witness before seeking to introduce this evidence, such a foundational showing of unavailability is not to be made in front of the jury. It is

---

[5] To the extent that the State sought to introduce not only Ashley's end of the conversation, but Ms. Hope's end as well, Ms. Hope's statements were admissible as non-hearsay to place into proper context the statements made on the other end of the conversation by Ashley. See, e.g., Johnson v. State, 653 So. 2d 1074 (Fla. 3d DCA 1995); Bowens v. State, 80 So. 3d 1056 (Fla. 4th DCA 2012).

8

instead a determination to be made by the trial court. Indeed, a hearing had already been held (outside the presence of the jury) at which the trial court concluded Ms. Hope would persist in her refusal to testify despite the trial court ordering her to do so, and held her in contempt for her continued refusal. In other words, the trial court had already determined that Ms. Hope was "unavailable" as a witness, as that term is expressly defined in Florida's Code and Rules of Evidence. See § 90.804(1)(b), Fla. Stat. (2018) (providing in pertinent part that "unavailability as a witness" means that the declarant "[p]ersists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so"). No further showing was required, and no such showing in front of the jury was permissible.

## CONCLUSION

The State and the trial court were aware that Ms. Hope would refuse to testify at the trial of her son if called by the State to the witness stand. The trial court had already held a hearing, ordered Ms. Hope to testify, and held her in contempt for persisting in her refusal to testify despite the trial court's order. There was no valid basis for the State to call Ms. Hope as a witness, and the trial court committed reversible error in requiring her to take the witness stand for the sole purpose of having her invoke the Fifth Amendment in front of the jury and refuse to testify. The State has failed to demonstrate that this error was harmless. We therefore reverse and remand for a new trial.